IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY,                          §
                                          §
        Plaintiff,                        §
                                          §
v.                                        §          Civil Action No. 3:09-CV-2151-N
                                          §
REBECCA REEVES-STANFORD,                  §
                                          §
        Defendant.                        §

## ORDER

This Order addresses Rebecca Reeves-Stanford's motion to dismiss the Receiver's
original complaint [5], the Receiver's motion to strike Reeves-Stanford's affidavit in support
of her motion to dismiss [12], Reeves-Stanford's motion to stay discovery pending resolution
of her motion to dismiss [14], and the Receiver's motion to compel discovery and motion for
continuance [17]. For the reasons that follow, the Court denies Reeves-Stanford's motion
to dismiss. Accordingly, the Court further denies as moot the Receiver's motion to strike,
Reeves-Stanford's motion to stay discovery, and the Receiver's motions to compel and for
continuance. The Court directs the parties to confer and determine whether a continuance
is warranted given resolution of the motions addressed in this Order. The parties remain free
to refile the motion for continuance should they believe it necessary to do so.

### I. ORIGINS OF THE STANFORD RECEIVERSHIP

This dispute concerns matters related to the ongoing securities fraud actions originally
brought by the Securities Exchange Commission (the "SEC") against R. Allen Stanford, his
associates, and various entities under Stanford's control. *See SEC v. Stanford Int'l Bank,*

ORDER – PAGE 1

*Ltd.*, Civil Action No. 3:08-CV-0298 (N.D. Tex. filed Feb. 17, 2009). As part of that litigation, this Court "assume[d] exclusive jurisdiction and t[ook] possession of the" "Receivership Assets" and "Receivership Records," (collectively, the "Receivership Estate"). *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order").[1] The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3. Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate" *Id.* at 5.

Pursuant to this mandate, the Receiver has filed this action seeking to add Reeves-Stanford as a relief, or nominal, defendant, alleging that the proceeds from the sale of

---

[1]The Court appointed the Receiver on February 17, 2009 [10], and amended its original order on March 12, 2009 [157]. The motions before the Court reference the first amended order, which was virtually "identical" to the second amended order save "several minor exceptions" inapplicable to this dispute. Order of July 19, 2010 at 1 n.1.

Reeves-Stanford's former residence in Key Biscayne, Florida, are traceable to the Receivership Estate and therefore should serve as a potential source of recovery for defrauded investors and other claimants against the Stanford entities [1]. In response, Reeves-Stanford asks the Court to dismiss the Receiver's complaint, arguing broadly that (1) the Receiver lacks subject matter jurisdiction; (2) the Court cannot exercise personal jurisdiction over Reeves-Stanford; (3) the Receiver fails to state a claim for relief; (4) the Receiver's claims are based on privileged information; and (5) the statute of limitations may bar this action [5]. The Court addresses each of these arguments in turn.

## II. THE COURT HAS SUBJECT MATTER JURISDICTION

Reeves-Stanford advances several arguments under Rule 12. As mandated by Fifth Circuit caselaw, the Court first addresses Reeves-Stanford's contention that it lacks subject matter jurisdiction under Rule 12(b)(1). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)) "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)), and should "grant[] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders*, 143 F.3d at 1010). In reality, "the federal courts have followed a

general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak*, 81 F.3d at 1188. The plaintiff bears the burden of proof in the Rule 12(b)(1) context. *See Ramming*, 281 F.3d at 161.

The Court reads Reeves-Stanford's motion to raise three distinct arguments that fairly fall under the broader umbrella of subject matter jurisdiction. First, Reeves-Stanford argues that the Receiver lacks standing to prosecute this action. Def.'s Mot. to Dismiss at 3-4. This argument in turn implicitly, and necessarily, challenges the Court's subject matter jurisdiction to consider the Receiver's ancillary action. *Id.* Finally, Reeves-Stanford contends that she does not qualify as a relief defendant as that concept has been defined in caselaw and that any funds she may have received from Allen Stanford were received for consideration. *Id.* at 7-8. Because she does not qualify as a relief defendant, she argues, this Court lacks subject matter jurisdiction over a claim to her property. This last argument implicates Reeves-Stanford's argument under Rule 12(b)(6) for failure to state a claim, and so the Court will also analyze those objections under that mode of analysis in Part IV.

### A. The Receiver Has Standing to Bring this Action

As with other aspects of her motion to dismiss, Reeves-Stanford's standing-based argument fundamentally misunderstands the nature of federal receivership actions. She contends that the Receiver cannot bring "this action in his own name," *id.* at 4, because the SEC, not Ralph Janvey, filed the larger securities enforcement action against the Stanford defendants. According to Reeves-Stanford, simply acting "as the Receiver of the property of the Stanford Defendants and entities they own or control. . . . is insufficient to confer standing" on the Receiver to bring actions outside of the primary proceeding. *Id.* at 3-4.

But, it has long been an "undisputed proposition that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute such duties is ancillary to the main suit." *Crawford v. Silette*, 608 F.3d 275, 278 (5th Cir. 2010) (quoting *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981)); *see also Commodity Futures Trading Comm'n v. Am. Commodity Grp. Corp.*, 753 F.2d 862, 866 n.6 (11th Cir. 1984) (per curiam) (noting that "[r]eceivers have the power to bring ancillary actions" (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1482 (10th Cir. 1983) (Ponzi scheme defendant))); *Tcherepnin v. Franz*, 485 F.2d 1251, 1255-56 (7th Cir. 1973) (citing *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899)). The Receiver may bring such ancillary actions provided that he "seeks 'to accomplish the ends sought and directed by the suit in which the appointment was made,'" *Tcherepnin*, 485 F.2d at 1256 (quoting *Pope*, 173 U.S. at 577), and "sue[s] only to redress injuries to the entity in receivership." *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (Posner, J.) (Ponzi scheme). This latter limitation reflects the fact that, in the context of a Ponzi scheme, fraudulent money "transfers remove[] assets from the [entities] for an unauthorized purpose and by doing so injure[] the [entities]." *Id.* at 754. In such a case, federal equity receivership supplants the entities' leadership and places them under the "control[] [of] a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors," often by "bringing suit to recover [entity] assets unlawfully dissipated" by the Ponzi scheme's creators. *Id.* at 755. This includes the authority to sue nonparties to the

original action to further asset recovery. *See SEC v. Colello*, 139 F.3d 674, 675-76 (9th Cir. 1998).

Moreover, the location of the property sought by the Receiver has no bearing on standing. A receiver has standing to bring ancillary recovery actions in the appointing court regardless of the jurisdiction in which property traceable to the entities in receivership may be found. This power flows from the plain language of 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof."

The Receiver has standing to bring this suit. This Court appointed the Receiver and charged him with recovering assets traceable to the Stanford entities. The complaint adequately shows that the Receiver has brought this action in furtherance of the duties established in the Receivership Order. The suit stems directly from the larger action brought by the SEC against the Stanford entities. Indeed, the Receiver had pending a motion for an order to show cause why Reeves-Stanford should not be held in contempt for failure to comply with the Receivership Order in the SEC action, [699], which the Court denied as moot because the Receiver initiated this suit [938]. It makes no difference for standing purposes that the Receiver now opts to pursue equitable relief against Reeves-Stanford in an ancillary proceeding.

### B. The Court Has Ancillary Subject Matter Jurisdiction

By challenging the Receiver's standing, Reeves-Stanford implicitly questions the Court's authority to hear this case. Although it technically falls under its "Lack of Personal

Jurisdiction" section, the motion contains language suggesting that Reeves-Stanford does, in fact, advance this argument. *See* Def.'s Mot. to Dismiss at 4-5 ("The Receiver also alleges . . . that the Court has inherent subject matter . . . jurisdiction to enforce its own Orders, which is totally unsupported."). Reeves-Stanford also argues that the Receiver cannot rely on sections 77v(a) and 78aa of the Securities and Exchange Acts to establish jurisdiction in this Court because those sections confer jurisdiction only for an "action pending in the district where Defendant resides." *Id.*

These arguments lack any foundation in our jurisprudence. As an initial matter, the ancient principle that courts have the power to provide equitable relief applies to cases involving federal securities laws. *See, e.g.*, *Colello*, 139 F.3d at 676 (noting that "a plaintiff who has a cause of action under the securities laws can enforce those rights 'by such legal or equitable actions or procedures as would normally be available to him'" (quoting *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287-88 (1940))); *accord SEC v. Investors Sec. Corp.*, 560 F.2d 561, 567 (2d Cir. 1977) ("'It is now well established that Section[s] [77v(a) and 78aa] confer general equity powers upon the district courts.'" (citing *SEC v. Manor Nursing Ctrs, Inc.*, 458 F.2d 1082, 1103-05 (2d Cir. 1972) (collecting cases))). This includes the authority "to impose a receivership or grant other forms of ancillary relief" beyond those created by statute, *SEC v. Wencke*, 622 F.2d 1363, 1369 & n.8 (9th Cir. 1980) (citing, *inter alia*, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 386 (1970)), and enforce court orders to carry out those ends. *See, e.g.*, *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees." (citing *United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972))).

When a receiver brings a recovery action in furtherance of his duties, therefore, the appointing court "has ancillary subject matter jurisdiction over every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction." *Silette*, 608 F.3d at 278 (quoting *Haile*, 657 F.2d at 822); *see also Riehle v. Margolies*, 279 U.S. 218, 223 (1929) (Brandeis, J.) ("The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. . . . either in the original suit or by ancillary proceedings.") (citing, *inter alia*, *White v. Ewing*, 159 U.S. 36, 38-40 (1895)); *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362-63 (4th Cir. 2010) (holding a similar receivership action as "within the district court's ancillary jurisdiction recognized by the Supreme Court for over a century"). To effectuate these duties, the court "may . . . issue . . . all writs necessary to protect from interference all property in its possession." *Riehle*, 279 U.S. at 223. This reflects in part the appointing court's ultimate responsibility for retrieving assets traceable to the receivership entities. The receiver "appears as a party" to ancillary actions "only because he represents the court in its inherent power to wind up the estate of an insolvent [entity], over which it has by an original bill obtained jurisdiction." *White*, 159 U.S. at 40.

Accordingly, it makes no difference that the Receiver brings this action in the appointing court rather than the Southern District of Florida. This Court appointed the Receiver pursuant to its equitable powers under the federal securities laws and charged him with recovering assets traceable to the Receivership Estate. This Court, then, has ancillary

subject matter jurisdiction to hear any subsidiary action brought by the Receiver that falls within the ambit of the duties set forth in the Receivership Order. The Court now turns to address whether it has subject matter jurisdiction over an action that seeks to reclaim Receivership Estate assets from innocent third parties.

### C. The Court Has Subject Matter Jurisdiction Over the Receiver's Claim

Reeves-Stanford's final subject matter jurisdiction-related argument contains elements more properly characterized as objections to personal jurisdiction and failure to state a claim. Under the heading "Lack of Subject Matter Jurisdiction," she first asserts that her "property is not subject to disgorgement or otherwise by the Receiver." Def.'s Mot. to Dismiss at 7-8. Reeves-Stanford then claims that subject matter jurisdiction fails because the Receiver has not alleged that she violated any securities laws. *Id.* And, finally, she argues that she cannot serve as a relief defendant "because she is neither a 'trustee,' 'agent,' or 'depository' for the alleged monies" and, in any case, provided consideration for any funds that she did receive from Allen Stanford. *Id.* Although Reeves-Stanford appears to argue that the Court lacks "subject matter jurisdiction over the person," or at least confuses subject matter and personal jurisdiction, the Court reads her motion as concerning "subject matter jurisdiction over a claim to the property in the nominal defendant's possession." *Colello*, 139 F.3d at 676 n.1.

These arguments, too, fail because they misunderstand the admittedly "'obscure'" nature of relief defendant proceedings. *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191 (4th Cir. 2002) (quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)). Reeves-Stanford correctly notes that the Receiver has not asserted that she violated any securities laws. But, a court's exercise of subject matter jurisdiction over

a claim against a relief defendant does not require that the relief defendant be "accused of wrongdoing." *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009) (citing *Kimberlynn Creek*, 276 F.2d at 191)). Rather, "a federal court may order equitable relief against [a relief defendant] where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *Id.* (citing *Colello*, 139 F.3d at 677). Thus, "[b]ecause a nominal defendant has no ownership interest in the funds at issue, once the district court has acquired subject matter jurisdiction over the litigation regarding the conduct that produced the funds, it is not necessary for the court to separately obtain subject matter jurisdiction over the claim to the funds held by the nominal defendant." *Id.* (citing *Kimberlynn Creek*, 276 F.3d at 191-92). The plaintiff seeks out the relief defendant "purely as a means of facilitating collection." *Id.*; *accord SEC v. Cavanagh*, 445 F.3d 105, 109 n.7 (2d Cir. 2006) (citing *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005)).

The Receiver brings this action to name Reeves-Stanford as a relief defendant. He claims that Allen Stanford transferred proceeds of his Ponzi scheme to Reeves-Stanford, obviating the possibility that she has "a sufficient legitimate ownership interest to preclude treating [her] as [a] relief defendant." *Adams*, 588 F.3d at 835. The Receiver has not alleged that Reeves-Stanford violated any securities laws or actively participated in Stanford's scheme in a way that requires her joinder as a defendant to the main action. Indeed, the object of the Receiver's claim is not Reeves-Stanford, but the funds allegedly traceable to the Receivership Estate. This Court, therefore, has subject matter jurisdiction over the Receiver's claim.

Reeves-Stanford objects that she did not act as a "paradigmatic" relief defendant, *id.* at 835 ("a trustee, agent, or depository" (citing *Colello*, 139 F.3d at 676)), and that any funds from Allen Stanford were received for consideration. These objections relate more properly to Reeves-Stanford's failure-to-state-a-claim argument. Def.'s Mot. to Dismiss at 10-11. To the extent that they bear on the Court's subject matter jurisdiction over the Receiver's claim, however, the objections prove unavailing.

As an initial matter, the "lack of a legitimate claim to the [fraudulently obtained] funds" – not a formalistic category – "is the defining element of a nominal defendant." *Colello*, 139 F.3d at 677. For jurisdictional purposes, it simply does not matter that Reeves-Stanford might have received funds from Allen Stanford on the basis of their relationship, her status as mother to their children, or for some other putative form of consideration. *See SEC v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007) ("[T]he term ["nominal defendant"] is broad enough to encompass persons who are in possession of funds to which they have no rightful claim, such as money that has been fraudulently transferred by the defendant in the underlying securities enforcement action."). Courts have repeatedly heard and decided cases seeking to name as relief defendants third parties who allegedly came to possess the proceeds of fraudulently obtained funds on the basis of their relationships with persons suspected of running illegal securities schemes. *See Silette*, 608 F.3d 275 (relief defendant used Ponzi scheme proceeds to pay mortgage); *George*, 426 F.3d 786 (relief defendant used Ponzi scheme proceeds to pay for jewelry, car lease, and other expenses); *Scholes*, 56 F.3d 750 (Ponzi scheme creator diverted proceeds to ex-wife for alleged consideration).

ORDER – PAGE 11

Similarly, a purported relief defendant does not divest a court of subject matter jurisdiction simply by making some showing of ownership to a portion of the sought-after funds. *See, e.g.*, *Scholes*, 56 F.3d 750. Reeves-Stanford claims that the Key Biscayne property was her homestead and makes much of the fact that she paid for certain expenses, including property taxes. Although not cited in her brief, Reeves-Stanford's argument parallels that made by the defendants in the Fifth Circuit's relatively recent *Adams* decision. There, the Fifth Circuit ruled that this Court erred in naming certain investor defendants as relief defendants and ordering a freeze of their assets because our "jurisprudence requires only an 'ownership interest' to preclude an entity from being a proper relief defendant." 588 F.3d at 834 (citing *Kimberlynn Creek*, 276 F.3d at 191).

This does not mean that *any* showing of ownership interest precludes relief defendant status; by its own terms, *Adams* requires that the quantum of *legitimate* ownership interest be "sufficient."[2] *Id.* Indeed, *Kimberlynn Creek*, the Fourth Circuit case extensively cited in *Adams*, held that the "claimed ownership interest must not only be recognized in law; it must also be valid in fact. Otherwise, individuals and institutions holding funds on behalf of wrongdoers would be able to avoid disgorgement (and keep the funds themselves) simply by stating a claim of ownership, however specious." 276 F.3d at 192.

The Fifth Circuit recently reinforced this conclusion in *Silette*, a case closely analogous to this one. The plaintiff, Wendy Silette, sought to overturn the district court's order requiring her to convey her homestead condominium to the court-appointed receiver,

---

[2]The Defendants in *Adams* demonstrated a sufficient and legitimate ownership interest based on the terms of their CD contracts with Stanford International Bank.

Kelly Crawford, for eventual sale. Crawford had been appointed to recover assets traceable to a Ponzi scheme constructed by George Hudgins, the defendant in a securities fraud action brought by the CFTC. At some point, Hudgins gave several hundred thousand dollars to Silette, which she then used to pay off the outstanding balance on her condo's mortgage. Although Silette was innocent of any wrongdoing and had no knowledge of Hudgins's fraudulent activities, the Fifth Circuit held that the district court properly exercised subject matter jurisdiction and ultimately required Silette to transfer ownership of the condo to Crawford under an unjust enrichment theory. *See Silette*, 608 F.3d 275.

To summarize the preceeding discussion: The Court cannot dismiss for lack of subject matter jurisdiction because the Receiver has plead facts that ultimately could lead to recovery from Reeves-Stanford as a relief defendant, *see Ramming*, 281 F.3d at 161, and Reeves-Stanford's subject matter jurisdiction-related arguments do not comport with receivership jurisprudence. Although courts have yet to flesh out *Adams* and *Silette*, their holdings support the conclusion that Reeves-Stanford cannot divest this Court of subject matter jurisdiction by merely asserting some ownership interest in the Key Biscayne proceeds or claiming that any funds she received were for consideration. "For obvious reasons, judges are particularly insistent upon proof of commensurability when they are dealing with intrafamilial transfers attacked as fraudulent conveyances." *Scholes*, 56 F.3d at 758. The parties may dispute the extent of Reeves-Stanford's ownership of and the degree to which Allen Stanford provided funds for the Key Biscayne property, but that counsels moving forward with discovery, not finding a lack of subject matter jurisdiction. *See, e.g.*, *Edinburgh v. Am. Sec. Ins. Co.*, 2010 WL 3923292, at *5-7 (E.D. La. 2010) (noting that "courts have

widely recognized that where the question of jurisdiction is intertwined with the merits of the case, the proper course of action is to reserve for a later proceeding both the jurisdictional question and the merits of the case" (citing *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *Cont'l Cas. Co. v. Dep't of Highways, State of La.*, 379 F.2d 673, 675 (5th Cir. 1967)));[3] 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 at 245-53 (3d ed. 2004).   Should discovery uncover jurisdictional facts making this Court's exercise of subject matter jurisdiction improper, Reeves-Stanford remains free to renew her argument.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); FED. R. CIV. P. 12(h)(3).

### III. THE COURT HAS PERSONAL JURISDICTION OVER REEVES-STANFORD

Reeves-Stanford also moves to dismiss the Receiver's action under Rule 12(b)(2) for lack of personal jurisdiction.  *See* Def.'s Mot. to Dismiss at 4-7.  She advances two arguments in support: First, Reeves-Stanford claims that "the Receiver lacks personal jurisdiction over [her], and/or he has divested jurisdiction by failing to" post a bond with his section 754 filings in the Southern District of Florida.  *Id.* at 4; *see* 28 U.S.C. § 724.  She focuses the bulk of her jurisdictional attack, however, on an argument grounded in *International Shoe*, 326 U.S. 310 (1945), contending that she lacks minimum contacts with Texas and that forcing her to appear in this Court "would be an undue burden and certainly offend traditional notions of fair play and substantial justice."  Def.'s Mot. to Dismiss at 6.

---

[3]Because it has not assumed jurisdiction and "proceed[ed] immediately to the merits question, despite [Reeves-Stanford's] jurisdictional objections," the Court's decision here does not implicate the Supreme Court's concerns with "hypothetical" subject matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998).

These arguments buckle under scrutiny.  To begin with, Reeves-Stanford misreads both section 754 and the Receivership Order.  Section 754 mandates only that the Receiver "giv[e] bond as required by the court."  The Receivership Order provides that "[t]he Receiver shall not be required to post bond unless directed by the Court."  Order of July 19, 2010 at 3.  Accordingly, Reeves-Stanford's argument under section 754 must fail because the Court has not directed the Receiver to post bond.

Reeves-Stanford's *International Shoe*-based objection fares no better.  As a general matter, courts have consistently held that *International Shoe* does not apply to receivership actions.  *See, e.g.*, *Haile*, 657 F.2d at 822-26; *accord Ross*, 504 F.3d at 1145-46; *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287 (D.C. Cir. 1996).  They have done so because "[a]n ancillary receivership action does not involve an attempt by a state court or a federal court sitting in diversity to extend its power beyond its territorial limits through the use of a state long-arm service of process statute."  *Haile*, 657 F.2d at 823.  Instead, "by statute, the territorial jurisdiction of the appointing court is extended to any district of the United States where property believed to be that of the receivership estate is found."  *Id.*

Section 754 and 28 U.S.C. § 1692 provide the appropriate statutory authority here.  By allowing a receiver and district court to exercise jurisdiction over the purported receivership estate property, section 754 serves "as a stepping stone on [a court's] way to exercising *in personam* jurisdiction" over those persons having custody or control over the property at issue.  *Vision Commc'ns*, 74 F.3d at 290.  Once a receiver files the appropriate documents pursuant to section 754, he may then serve process in that district under section

1692.[4]  *See id.*; *see also Haile*, 657 F.2d at 826 ("The process authorized by § 1692 is not 'extra-territorial' but rather nationwide.").  Thus, "where a party has been properly served by the Receiver, the Due Process Clause is satisfied because the party has minimum contacts with the United States as a whole."  *Ross*, 504 F.3d at 1146 (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-106 (1987)); *accord Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822 (5th Cir. 1996) (following *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994)).

Under this standard, the Court has personal jurisdiction over Reeves-Stanford.  The Receiver acted pursuant to his duties under the Receivership Order and section 754 and filed the appropriate documents in the Southern District of Florida.  *See* App. in Support of Receiver's Resp. [9].  In doing so, he obtained both *in rem* jurisdiction over Receivership Estate property in Reeves-Stanford's custody or control and the ability to serve process in the Southern District of Florida under the nationwide service provisions of section 1692.  The Receiver subsequently filed this action to declare Reeves-Stanford a nominal defendant and to reacquire Receivership Estate assets allegedly transferred to her by Allen Stanford.

Although Reeves-Stanford argues that she has not received a copy of the Receivership Order or original complaint filed by the SEC in the primary action, Def.'s Mot. to Dismiss at 4,[5] the appropriate due process inquiry concerns whether the Receiver properly served her

---

[4]Section 1692 provides: "In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts."

[5]This contradicts Reeves-Stanford's claim that she received the Receivership Order and other documents in her response to the Receiver's motion for order to show cause filed

with process in this case.  Given the Receiver's compliance with section 754, he could

effectuate service of process under section 1692 in the Southern District of Florida.  This

satisfies due process in the receivership context.  *See Haile*, 657 F.2d at 825 (holding that the

"due process limitations on [statutorily-authorized nationwide service of process] should be

precisely the limitations applicable on a state's process within its territorial limits[:] notice

calculated to inform the defendant of the pendency of the suit").  Reeves-Stanford does not

contend that service in this instance insufficiently apprised her of the Receiver's action or its

nature.   Accordingly, the Court properly exercises personal jurisdiction over Reeves-

Stanford.

The Receiver argues that Reeves-Stanford's potential violation of the Receivership

Order gives the Court an additional jurisdictional hook.  *See* Pl.'s Resp. to Mot. to Dismiss

at 10-11 (citing *Waffenschmidt v. Mackay*, 763 F.2d 711, 714 (5th Cir. 1985) ("Nonparties

who reside outside the territorial jurisdiction of a district court may be subject to that court's

jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in

violating that order.  This is so despite the absence of other contacts with the forum.")).

Were this action merely a continuation of the Receiver's motion for order to show cause in

the SEC action, the Court would agree.

As the Receiver acknowledges, however, the crux of this case concerns whether

Reeves-Stanford has custody or control of funds traceable to the Receivership Estate and, if

so, whether the Court should require her to disgorge those funds despite her alleged lack of

---

in *SEC v. Stanford Int'l Bank, Ltd.*.  *See* [753] at 1-2 and accompanying exhibits.

culpability. The Receiver has not asked the Court to hold Reeves-Stanford in contempt in this action and, the Receiver's claim that Reeves-Stanford "is actively participating in the Stanford Defendant's misappropriation and concealment of the Ponzi scheme's proceeds" notwithstanding, Pl.'s Resp. to Mot. to Dismiss at 10, a plaintiff in a nominal defendant action by definition cannot base his claim for relief on the purported nominal defendant's alleged wrongdoing. *See SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) ("[The plaintiff] cannot continue to name [the purported relief defendant] as a 'nominal defendant . . . while at the same time implying strongly that [the purported relief defendant] is a violator of the securities laws.").

If the Receiver believes that Reeves-Stanford has violated the Receivership Order, he can ask this Court to hold her in contempt. If he believes that she has engaged in wrongdoing by aiding and abetting the Stanford Defendants, he may seek leave of this Court to amend his complaint accordingly. Until then, the Court will not, and arguably cannot, base its jurisdiction on Reeves-Stanford's allegedly violating an order of this Court.

## IV. THE RECEIVER STATES A CLAIM FOR RELIEF

Reeves-Stanford next argues that the Court should dismiss the Receiver's complaint under Rule 12(b)(6) for failure to state a claim for relief. Although she specifically objects to the Receiver's "conversion claim," the overarching thrust of Reeves-Stanford's argument appears to object to the Receiver's attempt to name her as a relief defendant. Def.'s Mot. to Dismiss at 10-11.

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

As the Supreme Court recently observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported

by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

In *Adams*, the Fifth Circuit ratified the relief defendant claim standard used by the Ninth and other circuits: "[A] federal court may order equitable relief against [a relief defendant] where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds."  588 F.3d at 834. (citing *Colello*, 139 F.3d at 677 (9th Cir.)); *see also George*, 426 F.3d at 798 (6th Cir.); *Kimberlynn Creek*, 276 F.3d at 192 (4th Cir.); *Cavanagh*, 155 F.3d at 136 (2d Cir.); *Cherif*, 933 F.2d at 414 (7th Cir.).  To reiterate a point already made, a plaintiff seeking to name a relief defendant need not make any showing of the purported relief defendant's culpability or wrongdoing.  *Adams*, 588 F.3d at 834.  "[A] nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief; no cause of action is asserted against a nominal defendant."  *Id.* (citing *Kimberlynn Creek*, 276 F.3d at 191-92).

The Receiver has pled sufficient facts to state a relief defendant claim under this standard.  The complaint alleges that Allen Stanford fraudulently obtained funds through the use of a Ponzi scheme and then gave a portion of those funds to Reeves-Stanford in connection with her acquisition of the Key Biscayne property.  Accordingly, the Receiver further argues, the Key Biscayne property became part of the recoverable Receivership Estate

under the Receivership Order, making it impossible for Reeves-Stanford to claim legitimate ownership of the property and, after sale, its proceeds.

The Court reads the complaint as asserting three theories of illegitimate ownership: constructive trust, fraudulent transfer, and conversion. *See* Compl. at 8-10. These subclaims flow, respectively, from the Receivership Order's terms, Allen Stanford's actions, and Reeves-Stanford's sale and subsequent holding of the Key Biscayne proceeds. Although in some places the Receiver's complaint and response to the motion to dismiss border on alleging that Reeves-Stanford has engaged in wrongdoing, the Court reads these claims as consonant with the overarching relief defendant claim and its elements because none requires a showing of wrongdoing by Reeves-Stanford. Thus, to the extent that Reeves-Stanford argues that the Receiver has "improperly raise[d] various causes of action," Def.'s Mot. to Dismiss at 10, her objection must fail because the Receiver has plead only one claim that could potentially provide him relief – that the Court declare Reeves-Stanford a relief defendant. Under that claim, the Receiver asserts three subclaims that could lead to Reeves-Stanford forfeiting the Key Biscayne proceeds to the extent that they are traceable to the Receivership Estate.

Reeves-Stanford almost exclusively focuses her fire under Rule 12(b)(6) on the Receiver's conversion theory.[6] She argues that the Receiver fails to plead the elements of conversion and, in any case, cannot trace the specific allegedly converted funds. Both the Receiver and Reeves-Stanford assume that Texas conversion law applies here, but the Court

---

[6]Because the motion to dismiss does not discuss the Receiver's fraudulent transfer claim, the Court addresses only Reeves-Stanford's conversion-related objections.

will follow the Fifth Circuit's approach in *Silette* and apply Florida law. *See Silette*, 608 F.3d 275 (applying Florida law in Ponzi scheme receivership context); *see also Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006) (applying Washington State law in Ponzi scheme receivership context). The similarity between Texas and Florida conversion law, however, preserves the analysis in both the motion to dismiss and the Receiver's response.

Under Florida law, "[c]onversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing *Thomas v. Hertz Corp.*, 890 So.2d 448, 449 (3d Fla. Dist. Ct. App. 2004)); *accord Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So.2d 858, 860 (Fla. 1948). Conversion "'may occur where a person wrongfully refuses to relinquish property to which another has the right of possession,' and it 'may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action.'" *United Tech Corp.* at 1270 (quoting *Seymour v. Adams*, 638 So.2d 1044, 1047 (5th Fla. Dist. Ct. App. 1994)); *accord Misabec Mercantile, Inc., de Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 837-38 (11th Cir. 1988).

The Receiver sufficiently pleads conversion under this standard. He claims that the Key Biscayne proceeds are traceable to the Receivership Estate. If true, the proceeds properly belong to the receivership entities, and this Court has authorized the Receiver to collect such property under the Receivership Order. Reeves-Stanford, even if acting out of a sincere belief that the proceeds legitimately belong to her, allegedly holds those funds in contravention of the Receiver's rights and refuses to hand them over. Because the Receiver

states a prima facie case of illegitimate ownership based on conversion of Receivership

Estate property, the Court rejects Reeves-Stanford's Rule 12(b)(6) argument.

### V. REEVES-STANFORD FAILS TO SHOW THAT EITHER THE STATUTE OF LIMITATIONS OR RULE 9(b) APPLIES TO THE RECEIVER'S CLAIMS

Reeves-Stanford also argues that the Court should dismiss the Receiver's action based

on a "potential statute of limitations defense." Def.'s Mot. to Dismiss at 11-12.

Additionally, under the same heading, Reeves-Stanford contends that the Receiver must

precisely state the "time frame for [Allen Stanford's] alleged fraud." *Id.* The Court reads

the latter argument as objecting that the Receiver has not "state[d] with particularity the

circumstances constituting fraud" under Rule 9. FED. R. CIV. P. 9(b).

"A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate

method for raising a statute of limitations defense." *Mann v. Adams Realty Co., Inc*, 556

F.2d 288, 293 (5th Cir. 1977). A court should grant dismissal under Rule 12(b)(6) "if a

successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco

Prod. Inc.*, 794 F.2d 967, 970 (5th Cir. 1986) (citing *Kaiser Aluminum & Chem. Sales, Inc.

v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105

(1983)). Thus, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where

it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to

raise some basis for tolling or the like." *Jones v. Alcoa*, 339 F.3d 359, 366 (5th Cir.2003);

*accord Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007).

Reeves-Stanford fails to show that the Receiver's complaint contains a statute of

limitations defense. Indeed, she offers nothing to support this contention other than the

"remoteness in time" between this action and her receipt of funds from Allen Stanford.

Def.'s Mot. to Dismiss at 12. Reeves-Stanford has the burden of clearly identifying a statute of limitations defense should one in fact exist. One does not appear on the face of her motion, and the Court cannot analyze the complaint and raise one *sua sponte*.

To the extent Reeves-Stanford believes the Receiver's action should fail under Rule 9, the Court finds that his complaint alleges fraud with sufficient particularity to avoid dismissal. The Receiver has provided Reeves-Stanford sufficient notice of the time period in which he believes the transfer of fraudulently-obtained funds occurred – during and after the purchase of the Key Biscayne property. And, the Receivership Order specifically applies to "[a]ny . . . person that holds, controls, or maintains accounts or assets of . . . any Defendant, or has held, controlled, or maintained any account or asset of . . . any [D]efendant since January 1, 1990." Order of July 19, 2010 at 12.

Assuming, as the Court must, that the factual allegations in the complaint are true, Reeves-Stanford's conduct and the proceeds both fall within the time period covered by the Receivership Order: Allen Stanford, a defendant in the SEC action, engaged in fraudulent acts and gave Reeves-Stanford funds derived from those acts to purchase the Key Biscayne property. This made the property an asset traceable to the Receivership Estate. Reeves-Stanford subsequently sold the Key Biscayne property, causing her to now hold and control proceeds that are traceable to the Receivership Estate. Accordingly, the Receiver has apprised Reeves-Stanford of a sufficiently "substantial amount of particularized information about [his fraud] claim in order to enable [her] to understand it and effectively prepare a responsive pleading and an overall defense of the actions." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1296 at 39 (3d ed. 2004).

## VI. REEVES-STANFORD'S PRIVILEGE-BASED OBJECTION LACKS MERIT

Reeves-Stanford's final argument consists of various objections to the Receiver's alleged use of information and documents protected by the attorney-client privilege. Although difficult to follow, Reeves-Stanford appears to object to the Receiver's assertion that she conferred with counsel and sold the Key Biscayne property after first having received this Court's Receivership Order and other documents attached to the subpoena issued against her in the SEC's securities fraud action against Allen Stanford. *See* Def.'s Mot. to Dismiss at 9-10. She seems to believe that the Receiver bases this claim on privileged information or communications. Additionally, Reeves-Stanford contends that certain exhibits attached to the Receiver's motion for order to show cause in the SEC action are privileged settlement communications that cannot be used as evidence in this action.

The Court is not persuaded. To the extent that the Receiver's complaint in this action references facts and events in the SEC action, those references appear limited to publicly-disclosed or known facts and information contained in unsealed documents filed with the Court. Reeves-Stanford herself referenced several of the facts and documents to which she now objects in her affidavit attached as Exhibit B in her response to the Receiver's motion for order to show cause. The Court finds nothing on the face of the complaint that indicates the Receiver improperly relied on privileged documents, communications, or information and accordingly declines to dismiss the complaint on that basis.

## CONCLUSION

The subject matter of this action and Reeves-Stanford personally both fall within this Court's jurisdiction. The Receiver has stated a proper claim for relief, and Reeves-Stanford's

statute of limitations and privilege arguments lack merit.  Accordingly, the Court denies

Reeves-Stanford's motion to dismiss and further denies as moot her motion to stay discovery

and the Receiver's motions to strike, to compel discovery, and for a continuance.


Signed November 18, 2010.

David C. Godbey
United States District Judge